**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JANE ROE,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI,**<br><br>**Defendant.** | **1:25-cv-8157 (ALC)**<br><br>**ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Pending before the Court is Defendant Icahn School of Medicine's Motion to Dismiss Plaintiff's Complaint. ECF No. 21. The Motion to Dismiss (the "Motion") is fully briefed.

Plaintiff's complaint (the "Complaint") alleges violations of Title IX under four different theories along with several state claims. The Court finds that Plaintiff fails to state a claim under Title IX and declines to address the state law claims at this juncture. The Complaint is **DISMISSED** in its entirety. Plaintiff is granted leave to amend.

## BACKGROUND

*Factual Background*

The facts in this section are taken from the Complaint and its incorporated documents. The facts are assumed to be true for purposes of the Motion to Dismiss.

In Plaintiff Jane Roe's final semester as a medical student at the Icahn School of Medicine at Mount Sinai ("Defendant"), she reported that a male student, John Doe, had sexually assaulted her in a campus residence hall. Compl. ¶¶ 34-35. After conducting an investigation, Defendant found John Doe responsible for sexual assault and imposed a 20-month suspension on him. *Id.* ¶ 37. Defendant's written determination of John Doe's responsibility found suspension

to be the appropriate sanction "[b]ecause the assault did not involve forcible rape or penetration; occurred while the Respondent was under the influence of alcohol; and because there was no evidence presented to the panel of any similar or related acts when the Respondent was not inebriated," noting that suspension would grant John Doe the "opportunity to complete his medical training." ECF No. 23-1, at 20. Plaintiff appealed Defendant's chosen sanction and challenged the factors which Defendant applied to come to its decision. Compl. ¶ 43. In response, Defendant affirmed its prior decision. *Id*. ¶ 44.

*Procedural Background*

On October 4, 2025, Plaintiff filed her Complaint bringing claims under Title IX, the New York State Human Rights Law, the New York City Human Rights Law, and other state law provisions. ECF No. 8. On December 9, 2025, the Court granted Plaintiff leave to proceed under pseudonym and a related protective order. ECF No. 18. On January 6, 2026, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 21-22. Plaintiff submitted an opposition brief on January 20, 2026, ECF No. 24, after which Defendant filed a reply brief in further support of its motion to dismiss, ECF No. 25.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff

alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). The court must treat the facts contained in plaintiff's complaint as true, resolving any factual disputes in favor of the plaintiff.

## DISCUSSION

### I. Plaintiff's Title IX Claims Fail.

Plaintiff has failed to establish a violation of Title IX under any of her proffered theories. While a Plaintiff who was the reporting party in the underlying disciplinary proceedings is not foreclosed from bringing an erroneous outcome or selective enforcement claim, Plaintiff's allegations do not satisfy the standard. First, Plaintiff agrees with the outcome of the underlying

proceedings and therefore does not allege that the outcome was "erroneous." Plaintiff moreover fails to provide a relative comparator, which is fatal to her selective enforcement claim.

Plaintiff's remaining claims fare no better. Plaintiff has failed to allege circumstances that give rise to an inference of discrimination against her because of her sex or gender. Plaintiff relies on allegations that the male perpetrator was favored, but she provides no nexus between either party's gender and the alleged bias.

Finally, Plaintiff's hostile environment claim fails because Plaintiff's allegations are insufficient to show that Defendant did not "adequately respond" to a hostile educational environment.

**a. Erroneous Outcome or Selective Enforcement Claims Do Not Require the Plaintiff to Have Been the Responding Party**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 USC § 1681(a). Title IX accordingly prohibits "the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). The Second Circuit has articulated at least two theories of liability that Plaintiffs may use to attack disciplinary proceedings: "erroneous outcome" or "selective enforcement." *See Roe v. St. John's University*, 91 F.4th 643, 652 (2d Cir. 2024). To plead an erroneous outcome claim, a plaintiff must allege: "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* (citing *Yusuf*, 35 F.3d at 715). To plead a selective enforcement claim, the plaintiff must allege "that the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.

Defendant argues that Plaintiff may not bring a claim asserting erroneous outcome or selective enforcement because Plaintiff was the reporting party in the underlying disciplinary proceedings. Specifically, Defendant argues that the Second Circuit limited such claims to respondents in Title IX disciplinary proceedings. *See* ECF No. 22, at 9 ("Plaintiff's erroneous outcome claim fails because she does not allege that she was 'innocent and wrongly found to have committed an offense.'"); *see also St. John's*, 91 F.4th at 652 (referring to the "essence" of erroneous outcome claims and selective outcome claims).

The Court declines to accept Defendant's interpretation of *St. John's*. The Second Circuit, in referring to the "essence" of erroneous outcome and selective enforcement cases, described the typical cases, not the only cases. The elements of erroneous outcome do not include any reference to whether the Plaintiff was the reporting party or respondent. *See id.* The test for selective enforcement as articulated in *Yusuf* also does not contain such a limitation. *See Yusuf*, 35 F.3f at 715. The best interpretation of the "essence" statements in *St. John's* is that the Court is paraphrasing *Yusuf*'s general description of the majority of cases brought under the two theories, not making a definitive statement on the law.

Thae cases do, however, indicate that the Plaintiff does not properly bring an erroneous outcome claim because the dispute is over the sanction issued, not the panel's decision on whether the respondent committed the offense. *See St. Johns*, 91 F.4th at 660. I find two sources of support in the relevant caselaw. First, cases in this Circuit have characterized an erroneous outcome as an "erroneous finding," and otherwise indicate that the "outcome" is factual. *See Yusuf*, 35 F.3d at 715. Additionally, the test for "erroneous outcome" refers to the "accuracy of the outcome," indicating further that "outcome" refers to factual findings, not a discretionary

disciplinary decision. *See Doe v. Colgate*, 760 Fed. Appx. 22, 30 (2d Cir. 2019). Plaintiff therefore does not allege that there is an "erroneous outcome" in this case.

**b. Plaintiff's Selective Enforcement Claim Also Fails Absent Allegations of Differential Treatment of a Similarly Situated Student**

Plaintiff alleges that by "intentionally selecting and issuing lesser sanctions" for John Doe and "creating and applying *ad hoc* factors," "IMSMMS demonstrated gender-bias in the male student's favor." Compl ¶ 74 (italics in original). Plaintiff fails to allege that Defendant treated similarly situated students of the opposite sex differently. As the Second Circuit has held, a "claim of selective enforcement fails in the absence of allegations that [the school] treated a similarly situated student of the opposite sex differently." *St. John's University*, 91 F.4th at 660 (cleaned up). That is, because Plaintiff does not include any allegations that Defendant "treated similarly situated females facing comparable sexual misconduct charges differently from John," Plaintiff fails to state a claim for selective enforcement. *See* ECF No. 22, at 12.

**c. Plaintiff Fails to Plausibly Allege Circumstances Raising an Inference of Discrimination**

Plaintiff makes four Title IX claims: erroneous outcome, selective enforcement, hostile environment, and sex-based discrimination. All four claims require "proof of discriminatory intent." *See Yusuf*, 35 F.3d at 714-15; *see also Doe v. Syracuse Univ.*, 341 F.Supp.3d 125, 136 (N.D.N.Y. 2018) ("Under either theory, Plaintiff must plead and prove that 'the complained-of conduct was discriminatory.'"). Plaintiff must show "that the defendant discriminated against h[er] because of sex; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Noakes v. Syracuse Univ.*, 369 F.Supp.3d 397, 413 (N.D.N.Y. 2019) (citation omitted).

In order to make out a claim that an educational institution violated Title IX in a disciplinary context, Plaintiff must allege "specific facts that support a minimal plausible

inference of such discrimination." *St. John's University*, 91 F.4th at 652. This standard is "low." *Id.* However, merely alleging that an educational institution conducted a "deficient Title IX investigation," or "fail[ed] to comply with its internal Title IX policies"—even where the flaws are "potentially serious"—is not necessarily sufficient to allege an inference of discrimination. *Id*. at 654.

Plaintiff levies two main arguments to support an inference of discrimination: that the university disciplinary panel created and applied "ad hoc" factors in selecting a sanction for John Doe; and that the panel improperly considered the male student's interest in continued medical education. These arguments are unconvincing and are addressed in full below. However, even if those arguments did sufficiently allege biased treatment toward Plaintiff, Plaintiff has failed to raise an inference that Defendant was "motivated" by Plaintiff's sex or gender. *See Schiebel v. Schoharie Central Sch. Dist.*, 120 F.4th 1082, 1095 (2d Cir. 2024) ("In the context of an official action claim," Plaintiff must both "'suggest some form of bias' on the part of the recipient" and "must also allege facts suggesting that the 'bias was on account of sex'").

First, Plaintiff alleges that the disciplinary panel improperly "creat[ed] and appl[ied] *ad hoc* factors that did not exist" under the relevant policies. Compl. at ¶ 64. Plaintiff does not explain which factors the panel was required to apply, likely because neither policy includes any factors at all. Both policies, however, contemplate the existence of discretionary factors that the panel may consider in imposing sanctions and remedial actions. *See* Code of Conduct (allowing the panel to impose a sanction below dismissal if there exist "exceptional circumstances"); Misconduct Policy, "Appendix 3" at 75 (the panel is "empowered to impose what they believe to be the appropriate sanctions"). The decision not to specifically enumerate in the Code of Conduct any factors which may constitute "exceptional circumstances" is reasonable; the Code of

Conduct mentions several forms of conduct that may lead to dismissal, including theft and cheating, and the factors that would count as "exceptional" for some would be wholly unrelated to another. The use of factors not specifically enumerated in the policies is therefore not automatically a procedural error, nor is it *per se* discrimination. *See St. John's University*, 91 F.4th at 654 ("procedural errors are not inevitably a sign of sex bias.").

To the extent that Plaintiff would argue that the factors considered by the panel do not rise to the level of "exceptional circumstances," the Court declines to follow this reasoning. Even assuming that "exceptional circumstances" did not exist, and the panel therefore issued a determination that did not comply with the policies, a deviation from the Title IX policies is not necessarily a violation of Title IX. *See id*. Plaintiff must allege a "clearly irregular investigative or adjudicative process." *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019). Moreover, Plaintiff asks the Court to substitute its own reasoning—or Plaintiff's reasoning—in place of the panel's. Title IX does not require a "particular disciplinary action," *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999), much less a particular interpretation of a school's internal policies. The panel's reference to certain factors, all of which appear to be reasonably related to assessing which sanctions were warranted, do not raise an inference of intentional discrimination. *See* ECF No. 23-1, at 20 ("Because the assault did not involve forcible rape or penetration; occurred while the Respondent was under the influence of alcohol; and because there was no evidence presented to the panel of any similar or related acts when the Respondent was not inebriated, the panel determined that the Respondent should have an opportunity to complete his medical training and that a 20 month suspension was appropriate.").

Second, Plaintiff alleges that the "real reason [Defendant] selected [the] lesser sanction of suspension was to ensure that the male student could return and complete his medical degree,"

and that said selection reveals the panel's gender bias. *See* Compl., at ¶ 66. However, the panel first assessed the gravity of the conduct, then imposed a sanction that did not prevent the male student from completing his medical education. Plaintiff's argument appears to have the panel's reasoning exactly backwards.

An inference of discrimination requires more than a mere reference to the consequences of a sanction or the use of factors that are not explicitly mentioned in school policies. An inference of discrimination may be appropriate where an outcome unsupported by the evidence is coupled with public pressure. *See, e.g., Doe v. Columbia University*, 831 F.3d 46, 57 (2d Cir. 2016). Such an inference may also be appropriate where the presiding officer of a disciplinary panel prevented Plaintiff from "fully defending himself" at the disciplinary proceedings, and a plaintiff made allegations of "historical[] and systematic[]" adverse decisions against individuals of the Plaintiff's sex "regardless of the of the evidence." *See, e.g., Yusuf*, 35 F.3d at 716. The inference may even be appropriate where the school gives "inconsistent reasons for the level of punishment," "varying assessments over time…regarding the seriousness" of the misconduct at issue, and disparate treatment for people of the opposite sex. *See, e.g., Radan v. Manuel*, 55 F.4th 101, 133 (2d Cir. 2022).

None of those facts, or any facts of similar weight or concern, are alleged here. The gap between Plaintiff's allegations and the allegations in the aforementioned cases is important. Those cases allege facts sufficient to show not only bias, but, crucially, allege facts sufficient to show that the bias was "on the basis of [Plaintiff's] sex." *See St. John's*, 91 F.4th at 655 ("Title IX's text…prohibits discrimination only 'on the basis of sex'") (citing to 20 U.S.C. § 1681(a)). As stated above, Plaintiff's allegations are not sufficient to show either.

Discriminatory intent does not need to be "the most plausible explanation" for the conduct, but it does need to be plausible. *Columbia Univ.*, 831 F.3d at 57 (2d Cir. 2016). The Court finds that the Complaint's conclusion that the panel's findings are indicative of discriminatory intent falls short of minimal plausibility.

**d. Plaintiff Does Not Allege a Claim for Hostile Environment Under Title IX.**

Plaintiff's hostile environment claim also fails. To state a claim for hostile environment under Title IX, a Plaintiff must plausibly allege "that [s]he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment." *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 89 (2d Cir. 2011). In order to hold an educational institution liable for a hostile educational environment, the Plaintiff must also show "that a school official with 'authority to address the alleged discrimination and to institute corrective measures' had 'actual knowledge' of the discrimination and failed to adequately respond." *Doe v. Sacks*, 714 F.Supp.3d 402, 415 (S.D.N.Y. 2024) (citing *Papelino*, 633 F.3d at 89). Even assuming that Plaintiff satisfies the objective and subjective standards, Plaintiff's claim fails because Plaintiff does not allege that Defendant "failed to adequately respond."

"A school fails to adequately respond if it provides no response or if it provides a response that amounts to deliberate indifference to discrimination." *Papelino*, 633 F.3d at 89 (cleaned up) (citing *Gesber v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989)). Defendants indisputably provided a response; the response provides the basis for this matter. Plaintiff must therefore show that the response amounted to "deliberate indifference."

In order to establish deliberate indifference in this context, a Plaintiff must establish that the response was "clearly unreasonable in light of known circumstances." *See Papelino*, 633 F.3d at 89 (cleaned up) (citing *Davis*, 526 U.S. 648). Deliberate indifference "must, at a minimum, cause the student to undergo harassment or make her liable or vulnerable to it." *T.P. ex rel. Patterson v. Elmsford Union Free School Dist.*, 2012 WL 860367, at *8 (S.D.N.Y. 2012) (cleaned up) (citing to *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999)). An educational institution need only "take[] timely and reasonable measures to end the harassment"; the measures need not be ultimately effective, only "taken in good faith." *See Tesoriero v. Syosset Central School Dist.*, 382 F.Supp.2d 387, 398 (E.D.N.Y. 2005).

Plaintiff does not allege sufficient facts to find that the remedy was "clearly unreasonable" or was not prescribed in good faith. Institutions are afforded latitude in fashioning remedies. *See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012) ("when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians"). It is well settled that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 629 U.S. at 648. Administrators are not required to issue a particular disciplinary action, including expulsion or no proximity orders. *See id.* (disagreeing that "a school district must immediately suspend or expel a student accused of sexual harassment").

Here, the administrators clearly laid out their reasoning for the imposed sanctions. The reasoning referenced the relevant policies; discussed the basis for referencing one policy more extensively than the other; explained that the panel "weighed many factors," and named six such factors; and singled out the circumstances that justified the sanctions, with a clear logical connection between the circumstances and the remedy. The Court therefore finds that the remedy

was not "clearly unreasonable." *See Tubbs v. Stony Brook Univ.*, 343 F.Supp.3d 292, 316 (S.D.N.Y. 2018) ("The law in this area steadily holds that a school's response is not clearly unreasonable 'simply because the victim ... advocated for stronger remedial measures.'").

The hostile environment claim also fails because Plaintiff does not plead the existence of a hostile environment after the remedy was issued. Mere "foreseeable risk of ongoing proximity" is insufficient to demonstrate a hostile environment. *See JD1 v. Canisius College*, 2022 WL 2308902, at *17 (W.D.N.Y. 2022) (rejecting Plaintiff's theory that a working environment was "'hostile' because it put them in proximity to" alleged harassers). Plaintiff provides no support for the proposition that risk of proximity constitutes "severe or pervasive" "discriminatory intimidation, ridicule, and insult." Moreover, Plaintiff is not "vulnerable to" harassment simply because she is at risk of proximity, especially when the male student is subject to a no-contact order.

## II. The Court Declines to Address Plaintiffs' State Law Claims at This Juncture

Having dismissed Plaintiff's federal law claim, the Court is inclined to refuse to exercise supplemental jurisdiction over the remaining state law claims. *See Ferrari v. Cuomo*, 2025 WL 965131, at *16 (S.D.N.Y. Mar. 31, 2025) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Strs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)). However, given that the Court is granting Plaintiff leave to amend the Complaint, the Court declines to address the state law claims at this juncture.

## III. Leave to Amend

The Court now considers whether to grant Plaintiff leave to amend the Complaint. Federal Rule of Civil Procedure 15(a)(2) requires courts provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). That said, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (citation and internal quotation marks omitted). Leave may be denied where a plaintiff does not request to amend her pleading. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (observing that "no court can be said to have erred in failing to grant a request that was not made"); *see also Morey v. Windsong Radiology Grp.*, P.C., 794 F.App'x 30, 34 (2d Cir. 2019) (summary order) (holding that "the district court did not abuse its discretion in declining to *sua sponte* allow [plaintiff] leave to file an amended complaint").

Plaintiff has not requested leave to amend. However, it is plausible that through additions to the Complaint, Plaintiff could allege sufficient facts to state a claim. *Bellocchio v. Garland*, 614 F.Supp.3d 11, 20 (S.D.N.Y. 2022); *see also Glob. Tech Indus. Grp. Inc. v. Wells*, No. 21 CIV. 06891 (ER), 2022 WL 2872298, at *6 (S.D.N.Y. July 21, 2022). Accordingly, the Court grants Plaintiff 30 days to amend the Complaint.

## CONCLUSION

For the reasons outlined above, the Motion is **GRANTED**.

The Court will afford Plaintiff the opportunity to amend her Complaint to attempt to cure its deficiencies by October 5, 2026.

**SO ORDERED.**

Dated: September 9, 2026
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**