**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
MANHATTAN DIVISION

| | |
|---|---|
| **JANE ROE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI,**<br><br>**Defendant.** | **Civil Action No.: 1:25-cv-8157**<br><br>**AMENDED CIVIL COMPLAINT**<br><br>**Jury Trial Demanded** |

As the nation reels from news about educational institutions issuing lax sanctions for campus sexual assaults,[1] Plaintiff Jane Roe, by and through her undersigned counsel, hereby amends her civil complaint against the Icahn School of Medicine at Mount Sinai (ISMMS) for, among other things, its intentional failure to apply its voluntarily-selected, default sanction of expulsion for campus sexual assault, as published its Student Code of Conduct, after finding John Doe responsible for the same. For this malfeasance, Jane Roe renews her Title IX, the New York State Human Rights Law, the New York City Human Rights Law, and other state law claims against ISMMS.

## INTRODUCTION

1. After an ISMMS formal, Jane Roe reported to ISMMS that she awoke, intoxicated in a campus residence hall to John Doe repeatedly groping her breasts underneath her dress.

2. Jane Roe also reported to police and pursued a criminal case against John Doe.

3. At that time, ISMMS's Student Code of Conduct stated: "sexual assault . . . will result in dismissal . . . *absent exceptional circumstances*."

[1] *See e.g.,* Casey Tolan, et al., *Cornell found more than a dozen students responsible for sexual assault. Just two were expelled*. CNN (Oct. 14, 2026), https://www.cnn.com/2026/10/14/us/cornell-sexual-assault-jane-doe-invs.

4. During its Title IX investigation, Jane Roe also disclosed that John Doe had sexually harassed her after a previous ISMMS formal, when she had been intoxicated as well.

5. After its Title IX hearing, ISMMS found John Doe responsible for the sexual assault against Jane Roe but did not make a finding about this additional sexual harassment incident.

6. ISMMS refused to consider expulsion for this sexual assault or find "exceptional circumstances" to justify its deviation therefrom, as required by the Student Code of Conduct.

7. Specifically, ISMMS ***repeatedly and falsely*** claimed that its Student Code of Conduct did not apply to Jane Roe's campus sexual assault complaint or related grievance process.

8. Instead, without prior notice to the parties, instead of finding any "exceptional circumstances," ISMMS created and applied published *ad hoc* factors to justify its 20-month suspension, allowing John Doe to return to campus, complete his degree, and apply for residency.

9. Under these factors, due to gender bias, ISMMS failed to consider John Doe's pattern of sexual harassment against Jane Roe despite her providing relevant testimony about this incident.

10. ISMMS issued a "no contact order" that would allow John Doe to be in proximity to Jane Roe during her residency for academic or work reasons, perpetuating a hostile environment.

11. After Jane Roe's appeal, ISMMS confirmed that it did not apply the Student Code of Conduct and had used an *ad hoc* "circumstances, in totality" standard to justify their "exception" to using the default sanction of expulsion for John Doe sexually assaulting her on campus.

12. In the criminal case, John Doe admitted to Sexual Abuse in the Third Degree.

## **PARTIES**

13. Jane Roe is a natural person residing now in California. She is an ISMMS graduate who recently completed her residency within various ISMMS-associated medical facilities.

14. ISMMS is a non-profit corporation duly organized and existing by virtue of the laws of New York State, and it is conducting business in New York State.

## JURISDICTION

15. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because Plaintiff raises federal questions under Title IX.

16. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction because the state law claims are so related to the federal claims that they form the same case or controversy.

17. Pursuant to 28 U.S.C. § 1391, venue is proper because the parties reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred herein.

18. Pursuant to Fed. R. Civ. P. 4(k), this Court has personal jurisdiction over this action involving ISMMS because it is in New York City, New York.

## FACTUAL ALLEGATIONS

19. Unlike other areas of student discipline, campus sexual assaults arising at institutions of higher education are a highly regulated area of federal and state law.

20. ISMMS receives federal funding for its educational programs and activities.

### *Applicable Federal Law Under Title IX*

21. As a federal funding recipient, ISMMS is subject to the requirements of Title IX.

22. Title IX prohibits sex discrimination, including sexual harassment and sexual assault, in U.S.-based educational programs and activities receiving federal funding.

23. Title IX is designed to "eliminate" unlawful sex-based discrimination in federally funded U.S.-based educational programs and activities. 34 C.F.R. § 106.1.

24. Title IX ensures equal educational access for students subjected to campus sexual assault by requiring recipients, like ISMMS, to remedy hostile environments arising from the same.

25. Title IX obligates ISMMS to provide a prompt and equitable grievance process to resolve student complaints of "sexual assault," an offense defined under Title IX by reference to the Clery Act. 34 C.F.R. §§ 106.8(c) (citing 34 C.F.R. § 106.45), 106.30(a) (defining "Sexual assault" pursuant to the Clery Act under 20 U.S.C. 1092(f)(6)(A)(v)."), 106.45(b) (2020).

26. Title IX requires ISMMS to "[p]rovide an equal opportunity for the parties to present witnesses, including . . . expert witnesses" during its grievance process. 34 C.F.R. § 106.45(b)(5)(ii).

27. Title IX requires ISMMS to resolve sexual assault complaints by issuing a written outcome containing "[c]onclusions regarding the application of the recipient's **code of conduct** to the facts." 34 C.F.R. § 106.45(b)(7)(ii)(D) (emphasis added) (2020).

28. Title IX requires ISMMS to provide rationale in support of any sanctions it issues for campus sexual assaults. 34 C.F.R. § 106.45(b)(8)(iii)(E).

29. Title IX requires ISMMS to provide sexual assault victims with remedies that "restore or preserve equal access to [its] . . . education program or activity." 34 C.F.R. § 106.45(b)(1)(i).

30. Likewise, applicable Title IX guidance states in relevant part that ISMMS has the freedom to issue sanctions that are "in the best interest of [its] educational environment," but they "must provide remedies to the complainant that are 'designed to restore or preserve equal access to the [school's] education program or activity," per 34 C.F.R. § 106.45(b)(1)(i). U.S. DEPARTMENT OF EDUCATION, OCR, NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES RECEIVING FEDERAL FINANCIAL ASSISTANCE, 85 FED. REG. 97, 30274–30275.

31. Title IX allows ISMMS to burden respondents found responsible for campus sexual assault with disciplinary and punitive consequences as part of ensuring a victim's equal educational access is restored and preserved as a remedy to the resulting hostile environment caused on campus by this abuse. 34 C.F.R. § 106.45(b)(1)(i).

32. Title IX requires ISMMS to allow either party to appeal a campus sexual assault outcome, which includes sanctions. 34 C.F.R. § 106.45(b)(8)(i), 34 C.F.R. § 106.45(b)(8)(iii)(D).

33. Federal courts have held that Title IX obligates recipients, like ISMMS, to prevent and remedy hostile campus environments by ensuring victims are not left vulnerable to ongoing sexual harassment or violence. *See, e.g., Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999); *Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019); *Fem. Maj. Found. v. Hurley*, 911 F.3d 674 (4th Cir. 2018); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007).

***Applicable Federal Law Under the Clery Act***

34. As a federal funding recipient, ISMMS is subject to the requirements of the Clery Act.

35. The Clery Act addresses campus crimes, including sexual assaults, occurring on campus in U.S.-based higher education programs and activities receiving federal funding.

36. The Clery Act defines "sexual assault" to include fondling. 34 C.F.R. § 668.48(a) ("Sexual assault. An offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's UCR program and included in Appendix A of this subpart.").

37. The Clery Act defines "fondling" as "touching of the private body parts of another person for the purpose of sexual gratification, forcibly or against that person's will, or both; or not forcibly or against the person's will where the victim is incapable of giving consent . . . because of his or her temporary or permanent mental or physical incapacity." 34 C.F.R. Pt. 99, App. A.

38. The Clery Act requires "prompt, fair, and impartial proceeding" and requires them to be "[c]onducted in a manner that [i]s *consistent with the institution's policies and transparent to the accuser and accused*" for sexual assault complaints. 34 C.F.R. § 668.46(k)(3)(i) (emphasis added).

39. The Clery Act requires ISMMS to provide written rationale in support any sanctions issued as part of outcomes in campus sexual assaults cases. 34 C.F.R. §668.48(k)(3)(iv).

***Applicable State Law Under the "Enough is Enough" Act***

40. ISMMS is an institution of higher education subject to the "Enough is Enough" law, codified as New York State Education Law § 129-b.

41. New York State Education Law § 129-b requires ISMMS to develop and implement policies and procedures addressing campus sexual assault. N.Y. Educ. § 6440. Specifically, it requires ISMMS to publish a "code of conduct" that "govern[s] student behavior, rights, and responsibilities while . . . matriculated." N.Y. Educ. § 6439.

42. Pursuant to New York State Education Law § 129-b, ISMMS's "code of conduct" must define "sexual assault" in accordance with applicable federal law (as recounted *supra*). N.Y. Educ. § 6439(11).

43. Pursuant to New York State Education Law § 129-b, ISMMS must offer a grievance process for sexual assault allegations against students. N.Y. Educ. § 6444(5).

44. Pursuant to New York State Education Law § 129-b, upon receipt of a sexual assault complaint against a student, ISMMS must issue notice listing "possible sanctions," N.Y. Educ. § 6444(5)(b)(i), specifically stating "the sanction or sanctions that may be imposed on the respondent based on the outcome of the . . . conduct process." N.Y. Educ. § 6444(5)(c)(vii).

***ISMMS'S Student Code of Conduct***

45. ISMMS voluntarily limited its disciplinary discretion to impose sanctions for campus sexual assaults when publishing its Student Code of Conduct required by federal and state law.

46. Specifically, its Student Code of Conduct stated in relevant part: "Assault, sexual assault, theft, lying, cheating, or any intentionally dishonest behavior, . . . *will result in dismissal* from the School of Medicine *absent exceptional circumstances*."

47. This Student Code of Conduct was reviewed by ISMMS's Curriculum and Policy Subcommittee, approved by ISMMS's Executive Oversight Committee, and overseen by a dean.

48. Upon information and belief, ISMMS knowingly chose the Clery Act-defined term "sexual assault" rather than "rape" to ensure non-penetrative sexual offenses also received the default sanction of expulsion unless absent exceptional circumstances to warrant deviation therefrom.

***ISMMS'S Sexual Misconduct Policy***

49. ISMMS's Sexual Misconduct Policy incorporates its Student Code of Conduct.

50. ISMMS's Sexual Misconduct Policy was "designed to comply with applicable legal requirements" of Title IX, the Clery Act, and New York State Education Law § 129, among others.

51. ISMMS's Sexual Misconduct Policy covers "sexual misconduct" broadly, including severe misconduct like "sexual assault," and less severe misconduct like "sexual harassment."

52. ISMMS's Sexual Misconduct Policy contains Appendix 3, which lists "appropriate sanctions and/or remedial actions" for various forms of sexual misconduct, including expulsion.

53. Appendix 3 of ISMMS's Sexual Misconduct Policy states: "Designated Arbitrators are empowered to impose what they believe to be appropriate sanctions."

54. ISMMS's Sexual Misconduct Policy does not contain the Student Code of Conduct's default sanction of expulsion for sexual assault absent "exceptional circumstances," nor does it list any factors or provide examples of what constitutes "exceptional circumstances."

55. ISMMS's Sexual Misconduct Policy also does not contradict its Student Code of Conduct or the Code's default sanction of expulsion for sexual assaults.

56. ISMMS's Sexual Misconduct Policy contains a process for parties to appeal campus sexual assault outcomes, including the issued sanctions, which are considered part of that outcome.

***Relevant Context***

57. While a medical student, Jane Roe matched into the residency program at ISMMS, meaning she would stay on campus for ongoing medical training after graduating with her degree.

58. Jane Roe and John Doe had been friends previously, which is when John Doe told her about wanting to apply to and match with ISMMS's medical residency program as well.

***Jane Roe Reports John Doe for Sexual Harassment***

59. During the Title IX investigation, Jane Roe reported that she had attended a formal with several classmates, including John Doe, and that everyone was drinking alcohol there.

60. During the Title IX investigation, John Doe admitted that Jane Roe had become "incapacitated" from alcohol and classmates testified that she "looked sick" and was "pretty drunk."

61. During the Title IX investigation, Jane Roe reported that John Doe had kissed her and asked her to go home with him, and she expressly rejected these advances, but he kissed her again.

***Jane Roe Reports John Doe for Sexual Assault***

62. Jane Roe initiated the Title IX grievance process after another formal, when she awoke intoxicated in an on-campus residence hall to John Doe sexually assaulting her.

63. Upon initiating the Title IX grievance process, ISMMS issued a written notice to Jane Roe and John Doe stating: "Sanctions related to sexual assault may include discipline, up to and including expulsion. (Policy p. 75.)," citing its Sexual Misconduct Policy without any mention of its Student Code of Conduct or the related mandated sanction of expulsion for sexual assault.

64. During the Title IX investigation, Jane Roe reported concerns about John Doe trying to locate her whereabouts through classmates the day after this campus sexual assault.

65. By and through its Title IX grievance process, ISMMS found John Doe responsible for sexually assaulting Jane Roe on campus and issued sanctions as part of the Title IX hearing outcome.

66. However, ISMMS failed to issue any finding about John Doe's previous sexual harassment of Jane Roe, despite summarizing facts and evidence from the Title IX hearing about this sexual misconduct, including a text message from John Doe about the incident.

***ISMMS's Sanction Decision***

67. In its written Title IX determination, ISMMS only imposed a 20-month suspension on John Doe for sexually assaulting Jane Roe on campus.

68. In support of this sanction, ISMMS stated in relevant part: "Respondent should have an opportunity to complete his medical training and that a 20-month suspension was appropriate," staying he is "permit[ted] . . . to apply for residency programs upon his return to ISMMS."

69. In issuing this sanction, ISMMS did not mention or consider Jane Roe's right to access education free from the hostile environment caused by John Doe's campus sexual assault (and previous sexual harassment), despite this being its obligation under Title IX.

70. ISMMS also issued a "no contact order" only prohibiting John Doe from verbal, written, or other forms of contact, but failed to limit ongoing physical proximity to Jane Roe during her ongoing residency when he had an "academic/work-related reason."

71. Nothing prohibited ISMMS from issuing a "no contact order" prohibiting John Doe's ongoing physical proximity to Jane Roe given her Title IX right to access academic and work conditions free from the hostile environment created by John Doe's campus sexual assault (and previous sexual harassment).

72. ISMMS intentionally failed to prohibit John Doe's proximity to Jane Roe on campus for academic and/or work-related matters on purpose, and did so, upon information and belief, because it anticipated John Doe applying to its campus for residency and/or otherwise wanted him to have a competitive residency placement for its own reputational purposes.

73. To support the lesser sanction, ISMMS claimed broad disciplinary discretion under its Sexual Misconduct Policy, rejecting application of the Student Code of Conduct to avoid its self-imposed limited disciplinary discretion to issue an expulsion after sexual assault findings absent a showing of "exceptional circumstances" to justify any deviation therefrom.

74. In support of this lesser sanction, ISMMS created and listed a new *ad hoc* sanction standard, stating it had considered the "circumstances, in their totality."

75. In support of this lesser sanction, ISMMS also created and listed *ad hoc* factors identifying what "circumstances" it wanted to consider for John Doe's sexual assault case:

a. "severity and nature of the sexual assault;"

b. "context in which the assault occurred (while the Respondent was inebriated);"

c. other sexual misconduct complaints against the Respondent while at ISMMS;

d. Respondent's "remorse or empathy . . . , or any ownership of his actions;"

e. how to "prevent future occurrences;" and

f. the "impact" of the sexual assault on the victim.

76. Neither the Sexual Misconduct Policy, Student Code of Conduct, nor any other ISMMS material listed either the *ad hoc* sanction standard or *ad hoc* factors applied to John Doe.

77. Upon information and belief, ISMMS has never previously used these *ad hoc* sanction standard or *ad hoc* factors in any other campus sexual assault case.

78. As such, ISMMS denied Jane Roe the opportunity to address these *ad hoc* standard and factors during her victim impact statement before the adjudicators decided John Doe's sanctions.

79. Of note, these *ad hoc* factors failed to contain ISMMS's obligation under Title IX to issue remedies ensuring a hostility-free campus academic and work environment for Jane Roe after finding John Doe had subjected her to campus sexual assault (and previous sexual harassment).

80. For factor (a), ISMMS implied that non-penetrative sexual offenses have less negative impact on victims, counter to its acknowledgment that all "sexual assaults," not just "rapes," would face the default sanction of expulsion under its legally mandated Student Code of Conduct.

81. Regarding factor (c), ISMMS did not consider John Doe's previous sexual harassment of Jane Roe when she had been incapacitated by drinking alcohol (i.e., the nonconsensual kissing and sexually propositioning her after a formal).

82. This previous sexual harassment showed an escalating pattern of sexual misconduct by John Doe against Jane Roe, relevant to factor (e).

83. For factor (d), ISMMS found: "Respondent did not appear to have any remorse for the assault, other than . . . [a] lengthy text (as he insists that the assault did not happen), and had no ownership of his actions," failing to consider John Doe's lack of remorse or accountability for his previously admitted sexual harassment of Jane Roe as an additional consideration for sanctions.

84. Regarding factor (f), ISMMS found that "it was clear from [Jane Roe's] testimony and her impact statement that this incident was a life-changing event for her and had a profound and deep impact" without further reference to the specifics shared by Jane Roe during her testimony.

85. For this factor, ISMMS notably failed to mention or consider its Title IX obligation to ensure Jane Roe had a hostility-free campus environment during her residency, while again failing to consider the escalating pattern of his sexual misconduct exhibited by John Doe against Jane Roe.

86. Despite the ongoing risk indicated by John Doe's lack of remorse or accountability for sexually assaulting Jane Roe on campus, and due to ISMMS ignoring his escalating pattern of his sexual harassment towards Jane Roe while students, ISMMS selectively weighed its *ad hoc* factors to John Doe's benefit.

87. Upon information and belief, ISMMS did so due to John Doe's gender because it valued his ongoing educational access as a male student (even after sexually assaulting a classmate) over Jane Roe's ongoing educational access (after suffering a campus sexual assault) as a female student.

88. ISMMS did not cite any "exceptional circumstances" in its sanction reasoning or otherwise state that its adjudicators had found anything "rare" and/or "deviating from the norm" regarding John Doe's sexual assault of Jane Roe on campus.[2]

***Jane Roe Files a Title IX Appeal Challenging the Sanction***

89. Jane Roe challenged the Title IX outcome of the lesser sanction, and ISMMS accept this appeal, as required by federal law.

90. In her appeal, Jane Roe alleged procedural irregularities based ISMMS's refusal to apply the Student Code of Conduct by ***falsely claiming*** only the Sexual Misconduct Policy applied, and its creation and application of *ad hoc* factors weighed in the favor of John Doe.

91. Jane Roe also argued that, had she known about the *ad hoc* factors, she would have called Dr. Veronique Valliere, a sex offender expert, to testify before the adjudicators that:

a. most sexual assaults are non-penetrative, but the traumatic impact is the same; and
b. sexual offenders commonly use alcohol strategically to facilitate sexual assault and seek reduced culpability, relying on societal rape myths rather than research on point.

This would refute the potential for ISMMS's adjudicators to claim "exceptional circumstances."

92. In the resulting appellate decision, ISMMS affirmed the sanctions contained in the Title IX outcome: "Regarding the sanction, the Designated Arbiters found that circumstances, in

---

[2] The Merriam-Webster Dictionary defines the term "exceptional" as "rare" and "deviating from the norm." *See* https://www.merriam-webster.com/dictionary/exceptional.

totality, warranted a sanction short of dismissal," again affirming it had not applied the Student Code of Conduct's default sanction standards requiring expulsion absent "exceptional circumstances."

93. It added: "even if the Code of Conduct standard for sanctions were applied to this case, the Appeals Panel finds that there were a number of circumstances (as set out by the Designated Arbiters) in this case that warrant an exception to the most severe sanction of dismissal."

94. By and through this reasoning, ISMMS materially changed the meaning of its default sanction standard in the Student Code of Conduct to no longer require "exceptional circumstances."

95. Finally, and confusingly, it dismissed Jane Roe's argument that she needed to know the *ad hoc* factors before determining whether to call an expert witness to testify about them, even though the expert could not have testified on them without knowing what they were.

96. ISMMS also claimed that the expert witness' opinion would have been "speculative" about John Doe's risk of recidivism despite *ad hoc* factor (e) so speculating and (unlike ISMMS's adjudicators) Jane Roe's expert having specialized knowledge and skills around assessing sex offender recidivism based on scientific research.

97. As such, ISMMS provided Jane Roe with an inadequate and biased appeal process.

***ISMMS Perpetuates a Hostile Environment During Jane Roe's Residency***

98. During her residency, Jane Roe alerted ISMMS to the fact that John Doe was accessing her residency schedule, leaving her alarmed that he could find her on campus or at work at any time.

99. Upon information and belief, despite notice of the same, ISMMS did not remove this access by claiming it did not trigger a violation of its "no contact order," leaving Jane Roe at ongoing risk of John Doe finding her while attending academic or work-related residency requirements.

100. As such, ISMMS denied Jane Roe equal access to education by leaving a hostile campus environment where the man who sexually assaulted (and sexually harassed) her could stand near her and follow her into a room for any academic or work-related reason.

101. Upon information and belief, this meant John Doe could have joined her on patient rotations during residency, which required various trainees, whether residents or medical students, to engage together to determine patient care.

102. At one point, when Jane Roe had to renew her Advanced Cardiac Life Support certification through ISMMS's third-party vendor called CPR 123 for her residency, she saw John Doe listed as a fellow attendee of this training during sign in for the training.

103. Alarmed, Jane Roe immediately notified the trainers about her concern with John Doe being present. In doing so, the trainers directed her to leave and reschedule the training, despite the negative impact this delay would have had on her meeting ISMMS's residency requirements.

104. At her ongoing insistence, the trainers agreed to call John Doe, who had not yet arrived; he was running late. The trainers suggested he reschedule his training time, and he agreed.

***ISMMS Effectively Denies Jane Roe's Equal Access to Residency Opportunities and Benefits***

105. After Jane Roe saw John Doe on campus, she stopped using educational facilities outside of residency requirements limiting academic and career-related opportunities and benefits, as well as the campus fitness facility and lounges, as well as specialty seminars, mixers, and other events.

106. Jane Roe also declined opportunities to teach medical students as a preceptor—an opportunity for residents to establish credentials for academic-related careers in medicine—all due to wanting to avoid John Doe on campus to safeguard her mental and physical wellbeing.

107. Following her residency, despite planning initially to seek further training within the Mount Sinai system connected to the ISMMS, Jane Roe decided to leave New York to avoid John Doe; she now lives in California.

**COUNT I**
**(Title IX Selective Enforcement, 20 U.S.C. §§ 1681, *et seq.*)**

108. Jane Roe incorporates each allegation above as if fully set forth below.

109. Jane Roe filed this Title IX claim within the three-year statute of limitations.

110. In its sanction reasoning, ISMMS arbitrarily selected unpublished and unknown *ad hoc* factors, preventing Jane Roe from testifying on point or otherwise offering expert testimony on point during the Title IX hearing.

111. ISMMS also selectively weighed the *ad hoc* factors to minimize John Doe's sexual assault of Jane Roe while also selectively excluding its:

a. Title IX obligations to remedy the hostile environment created on campus from John Doe's sexual assault (and sexual harassment) of Jane Roe; and

b. Student Code of Conduct, containing the default sanction of expulsion for sexual assault, which it had to apply per federal and state law.

112. Despite ISMMS having voluntarily limited its disciplinary discretion for sexual assault cases (and a few other types of misconduct) to the sanction of expulsion absent findings of "exceptional circumstances," it selectively favored John Doe as a male student during this sexual assault brought by Jane Roe, a female student whom he had sexually abused, by refusing to apply it.

113. In its Title IX hearing decision and appellate decision, ISMMS ***falsely*** and ***repeatedly*** claimed to Jane Roe that it could avoid expulsion without finding "exceptional circumstances" by relying on its Sexual Misconduct Policy, but the Policy was incorporated into the Code and did not contradict or otherwise conflict with the Code's default sanction standard for sexual assault cases.

114. Furthermore, in its Title IX appellate decision, ISMMS claimed that—even if it had applied the Student Code of Conduct's default sanction—this standard's "exceptional circumstances" provision had been reinterpreted to mean merely finding a "number of circumstances . . . that warrant an exception," thus selectively and materially changing the Code's meaning to avoid the obligation to apply its default sanction of expulsion in Jane Roe's sexual assault case against John Doe absent "rare" circumstances or those "deviating from the norm" as required by the Code.

115. Unlike its Sexual Misconduct Policy, federal and state law obligations ISMMS to apply its Student Code of Conduct to campus sexual assault complaints.

116. Upon information and belief, ISMMS intentionally applied the broad sanction discretion left by Appendix 3 in the Sexual Misconduct Policy (meant for lesser forms of sexual misconduct, like sexual harassment) to intentionally avoid applying the narrowed expulsion sanction that ISMMS voluntarily mandated for itself to favor the ongoing access to education for John Doe, a male student, over Jane Roe's ongoing access to education, as a female student.

117. ISMMS expressed its gender bias as a substantial and/or motivating factor behind its discriminatory denial of Jane Roe's request that it apply its Student Code of Conduct default sanction standard for sexual assaults by:

a. including in its sanction reasoning its consideration only for John Doe's ongoing educational access; and

b. excluding its Title IX mandated consideration of only Jane Roe's ongoing educational access as the victim of John Doe's campus sexual assault.

118. Title IX protects sexual assault victims, like Jane Roe, as persons subject to sex discrimination, and does not apply to protect students committing sexual assault, like John Doe.

119. Upon information and belief, by and through its refusal to apply the Student Code of Conduct's default sanction standard to Jane Roe's sexual assault complaint when it had applied it in other non-sex-based misconduct cases covered by the same provision (i.e., assault, theft, lying, cheating, intentional dishonesty), ISMMS intentionally discriminated against her based on sex.

120. Put another way, ISMMS's refusal to apply its Student Code of Conduct's default sanction standard for sexual assault cases only and otherwise apply it for non-sex-based types of misconduct cases (i.e., assault, theft, lying, cheating, and intentional dishonesty) is differential treatment and thus unlawful discrimination on the basis of sex.

121. Upon information and belief, ISMMS also properly applied its Student Code of Conduct for misconduct complaints brought by male students, but not to those brought by female students, discriminating on the basis of sex.

122. ISMMS singled out the only type of misconduct covered by the default sanction standard in its Student Code of Conduct that is ***based on sex***—as Title IX prohibits sex discrimination in the form of sexual assault—for differential treatment, specifically, evasion.

123. ISMMS's evasion of its legal obligation to apply the Student Code of Conduct for Jane Roe's campus sexual assault case is intentional, as it ***falsely*** claimed to Jane Roe the default sanction standard in the Code ***did not apply*** to her sexual assault case, despite it being incorporated with its Sexual Misconduct Policy.

124. By selectively ignoring its legally mandated Student Code of Conduct for application in sexual assault cases, as well as ***repeatedly and intentionally mispresenting*** that the Code did not apply, ISMMS showed its intent to discriminate against Jane Roe based on sex, violating Title IX.

125. By and through its failure to properly apply the default sanction standards under the Student Code of Conduct by ***falsely claiming*** only its Sexual Misconduct Policy applied, counter to

the requirements of federal and state law, ISMMS intentionally created a discriminatory process, which facilitated ISMMS finding a lesser sanctions than expulsion for John Doe's on-campus sexual assault of Jane Roe, denying her equal educational access to a campus free of sex-based hostility.

126. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. discrimination based on sex;

b. loss of educational and career opportunities and benefits;

c. denial of a fair and impartial process regarding her sexual assault complaint;

d. past, present, and future economic losses, including lost wages and benefits;

e. reasonable attorneys' fees, as well as litigation costs and expenses;

f. pre-judgment and post-judgment interest; and

g. such other necessary and further relief that this Court deems just and proper.

## COUNT II

### (Title IX Erroneous Outcome, 20 U.S.C. §§ 1681, *et seq*.)

127. Jane Roe incorporates each allegation above as if fully set forth below.

128. Jane Roe filed this Title IX claim within the three-year statute of limitations.

129. Federal and state law define the "outcome" of a campus sexual assault complaint process to include issued sanctions, such that ***sanctions are part of the outcome*.**

130. Furthermore, Title IX expressly considers sanctions as part of the mandated remedies ISMMS must issue to restore and preserve Jane Roe's ongoing access to education free from a hostile environment after finding that John Doe had sexually assaulted her on campus.

131. By and through its Student Code of Conduct, which it had to apply in campus sexual assault cases per federal and state law, ISMMS voluntarily limited its disciplinary discretion for issuing sanctions in sexual assault cases to expulsion as the default sanction absent "exceptional circumstances" justifying its deviation from this default.

132. Despite ISMMS's finding that John Doe had sexually assaulted Jane Roe on campus, it refused to apply the default sanction of expulsion or find "exceptional circumstances" (meaning something rare or non-normative about the case), erroneously deciding his sanction.

133. As such, ISMMS issued an erroneous outcome because it refused to acknowledge its legally mandated Student Code of Conduct applied to Jane Roe's sexual assault case, requiring it to have consider the default sanction of expulsion for John Doe or find exceptional circumstances.

134. ISMMS expressed its gender bias as a substantial and/or motivating factor behind its discriminatory denial of Jane Roe's request that it apply its Student Code of Conduct default sanction standard for sexual assaults by:

a. including in its sanction reasoning its consideration only for John Doe's ongoing educational access; and

b. excluding its Title IX mandated consideration of only Jane Roe's ongoing educational access as the victim of John Doe's campus sexual assault.

135. Furthermore, ISMMS exhibited gender bias against Jane Roe and in John Doe's favor when weighing the *ad hoc* factors to minimize his sexual assault and avoid consideration of his escalating pattern of sexual misconduct against Jane Roe (rising from sexual harassment to assault).

136. Furthermore, none of the *ad hoc* factors considered by ISMMS identify "rare" sexual assault circumstances or those "deviating from the norm," such that it would not have satisfied the Student Code of Conduct's default sanction standard of "exceptional circumstances."

137. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. discrimination based on sex;

b. loss of educational and career opportunities and benefits;

c. denial of a fair and impartial process regarding her sexual assault complaint;

d. past, present, and future economic losses, including lost wages and benefits;

e. reasonable attorneys' fees, as well as litigation costs and expenses;

f. pre-judgment and post-judgment interest; and

g. such other necessary and further relief that this Court deems just and proper.

**COUNT III**

**(Title IX Hostile Environment, 20 U.S.C. §§ 1681, *et seq.*)**

138. Jane Roe incorporates each allegation above as if fully set forth below.

139. Jane Roe filed this Title IX claim within the three-year statute of limitations.

140. Jane Roe subjectively experienced a hostile environment on campus due to her ongoing fear of running into John Doe, who had previously sexually harassed and sexually assaulted her, thus limiting her access to educational opportunities and benefits during her residency.

141. Jane Roe also objectively experienced a hostile environment on campus, due to John Doe being allowed to attend the same CPR 123 training with her (required for her residency) and learning that John Doe had been monitoring her residency schedule to know her location on campus.

142. Upon information and belief, ISMMS perpetuated this hostile environment due to gender bias because it considered John Doe's ongoing education in the sanction reasoning but not its Title IX obligation to consider Jane Roe's ongoing educational access as the victim of his abuse.

143. Upon information and belief, aside from finding that John Doe committed a campus sexual assault, ISMMS failed to consider the resulting Title IX obligation it had to ensure Jane Roe's equal educational access free from a hostile environment through the issuance of remedies.

144. In doing so, it also intentionally minimized John Doe's hostility towards Jane Roe by failing to make a finding regarding the sexual harassment allegations against him raised during the Title IX process or objectively weigh these *ad hoc* factors to consider the same.

145. ISMMS's "no contact order" was an inadequate and ineffective remedy for the hostile campus environment because, upon his return to campus following his suspension, it allowed John Doe the same educational and work access as Jane Roe, directly alongside her.

146. ISMMS even invited John Doe to apply for residency on its campus, thus effectively facilitating a possibility for him to remain in contact with her.

147. ISMMS's decision to allow John Doe unfettered campus access for academic and work topics, regardless of Jane Roe's obligation to be in those same environments or around him during her residency, perpetuated the hostile environment on its campus, counter to Title IX.

148. As a result of ISMMS permitting John Doe's proximity to her on campus, Jane Roe declined teaching opportunities that would have advanced her medical career in academia and various ISMMS educational programs and activities to avoid John Doe, impeding her equal access to related opportunities and benefits that Title IX guaranteed her.

149. In other words, ISMMS's "no contact order" was half-hearted, and did not ensure Jane Roe could be free from the hostile environment created by John Doe's sexual assault and harassment.

150. Even if ISMMS's "no contact order" had reduced the hostility on campus, Title IX obligated it to prevent ongoing abuse and restore Jane Roe's equal educational access through ensuring her safety and eliminating sex-based hostility caused by John Doe on campus.

151. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. discrimination based on sex;

b. loss of educational and career opportunities and benefits;

c. denial of a fair and impartial process regarding her sexual assault complaint;

d. past, present, and future economic losses, including lost wages and benefits;

e. reasonable attorneys' fees, as well as litigation costs and expenses;

f. pre-judgment and post-judgment interest; and

g. such other necessary and further relief that this Court deems just and proper.

**COUNT IV**

**(Title IX Sex-Based Discrimination, 20 U.S.C. §§ 1681, *et seq.*)**

152. Jane Roe incorporates each allegation above as if fully set forth below.

153. Jane Roe filed this Title IX claim within the three-year statute of limitations.

154. At ISMMS, Jane Roe was a female student, and John Doe a male student.

155. They partook in ISMMS's grievance process, where Title IX required their equitable treatment to resolve the pending campus sexual assault complaint between them.

156. Jane Roe alleges that ISMMS violated her federal and state law rights during its campus sexual assault grievance process, not John Doe's rights, thus differentially treating her as a female student compared to him as a male student.

157. By refusing to apply the default sanction standard required by the Student Code of Conduct, ISMMS made an official decision to discriminate against Jane Roe in John Doe's favor.

158. Substantially motivated by gender bias, ISMMS knowingly created and applied *ad hoc* factors weighed in John Doe's favor to justify issuance of the lesser sanction of suspension despite no such factors existing in ISMMS's Sexual Misconduct Policy or Student Code of Conduct, and no prior notice to Jane Roe that these factors would be used to guide its sanction decision.

159. As such, ISMMS impeded Jane Roe's ability to argue those sanction-related factors or call an expert witness to testify about the same, thus denying her a fair and impartial grievance process as a campus sexual assault victim.

160. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. discrimination based on sex;

b. loss of educational and career opportunities and benefits;

c. denial of a fair and impartial process regarding her sexual assault complaint;

d. past, present, and future economic losses, including lost wages and benefits;

e. reasonable attorneys' fees, as well as litigation costs and expenses;

f. pre-judgment and post-judgment interest; and

g. such other necessary and further relief that this Court deems just and proper.

**COUNT V**

**(New York City's Human Rights Law (NYCHRL), N.Y. City Adm. Code §§ 8–101, *et seq.*)**

161. Jane Roe incorporates each allegation above as if fully set forth below.

162. Jane Roe filed this NYCHRL claim within the three-year statute of limitations.

163. ISMMS, with conscious disregard of and/or with recklessness regarding the legal rights of Jane Roe, engaged in gross misbehavior when it discriminated against her based on sex and in John Doe's favor due to gender bias during its grievance process by, among other things:

a. refusing to apply its Student Code of Conduct's default sanction standard for campus sexual assault, requiring expulsion absent "exceptional circumstances";

b. failing to find any "exceptional circumstances" to justify deviating from this default when issuing John Doe the lesser sanction of suspension.

c. ***claiming falsely*** that its Sexual Misconduct Policy had incorporated its Student Code of Conduct and related default sanction standard to avoid applying it to sanction John Doe for sexually assaulting Jane Roe.

d. creating and applying *ad hoc* factors without notice to the parties to justify issuing a lesser sanction to John Doe while also weighing these factors in his favor by refusing to rule on or otherwise consider her sexual harassment allegations against him;

e. changing the meaning of the default sanction standard of "exceptional circumstances" during the appeal process, again to justify issuing a lesser sanction to John Doe; and

f. allowing John Doe to return to campus during Jane Roe's medical residency and allowing him to be around and otherwise interact with her for any academic or work-related matters.

164. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. discrimination based on sex;

b. loss of educational and career opportunities and benefits;

c. denial of a fair and impartial process regarding her sexual assault complaint;

d. past, present, and future economic losses, including lost wages and benefits;

e. past, present, and future physical and psychological pain, suffering, and impairment;

f. reasonable attorneys' fees, costs, and expenses;

g. prejudgment interest;

h. punitive damages; and

i. such other necessary and further relief that this Court deems just and proper.

**COUNT VI**

**(New York State's Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290, *et seq*.)**

165. Jane Roe incorporates each allegation above as if fully set forth below.

166. Jane Roe filed this NYSHRL claim within the three-year statute of limitations.

167. At all times relevant, ISMMS knew Jane Roe had accepted a medical residency, such that it employed her at the time it issued the lesser sanction to John Doe, who sexually assaulted her, along him to return to the same campus and use the same campus facilities as her during her residency.

168. ISMMS continued to employ Jane Roe after John Doe returned to campus, allowing him to complete his degree and apply to residency programs while issuing a "no contact order" that allowed him to come into proximity to Jane Roe for academic and work-related matters, without considering of the potential impact on her as the victim of his sexual assault (and sexual harassment), counter to its legal obligation to remedy the hostile campus environment caused by such abuse.

169. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. discrimination based on sex;

b. loss of educational and career opportunities and benefits;

c. denial of a fair and impartial process regarding her sexual assault complaint;

d. past, present, and future economic losses, including lost wages and benefits;

e. past, present, and future physical and psychological pain, suffering, and impairment;

f. reasonable attorneys' fees, costs, and expenses;

g. prejudgment interest;

h. punitive damages; and

i. such other necessary and further relief that this Court deems just and proper.

## COUNT VII

**(False Advertisement, N.Y.S.L. Article 22-a)**

170. Jane Roe incorporates each allegation above as if fully set forth below.

171. Jane Roe filed this claim within the three-year statute of limitations.

172. ISMMS routinely attracts potential students from the public to apply for, and if accepted, enroll in, its medical program, exchanging their tuition payment for its educational services.

173. As part of attracting potential students to its campus and do to its legal obligations under both federal and state law, ISMMS regularly publicizes policies and procedures addressing campus sexual assault, such as its Student Code of Conduct and its Sexual Misconduct Policy.

174. In its Student Code of Conduct, ISMMS advertised a default sanction of expulsion for campus sexual assault, absent a finding of "exceptional circumstances" to justify a lesser sanction.

175. As a direct and proximate result of this advertisement, Jane Roe enrolled in and paid tuition for her attendance as a medical student at ISMMS.

176. As a direct and proximate result of such advertisement, and in anticipation of her graduation from its medical program, Jane Roe accepted a residency position at ISMMS.

177. As a direct and proximate result of such an advertisement, Jane Roe reported that John Doe had sexually assaulted her, thus accessing ISMMS's grievance process to seek his dismissal.

178. Despite advertising a default sanction of expulsion for campus sexual assault, ISMMS did not apply it against John Doe after finding him so responsible through its Title IX process.

179. ISMMS also failed to cite any "exceptional circumstances" to justify its deviation from the default sanction of expulsion for John Doe's campus sexual assault of Jane Roe.

180. Upon information and belief, ISMMS effectively committed fraud on incoming students, such as Jane Roe, by falsely advertising a default sanction of dismissal for campus sexual assault without any intention or practice of applying it in fact when male students sexually assaulted female students on its campus.

181. In support, Jane Roe cites ISMMS' ***repeated false claims*** that it did not have to apply the Student Code of Conduct, despite it being incorporated with its Sexual Misconduct Policy.

182. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. loss of educational and career opportunities and benefits;

b. denial of a fair and impartial process regarding her sexual assault complaint;

c. past, present, and future economic losses, including lost wages and benefits;

d. reasonable attorneys' fees, costs, and expenses;

e. prejudgment interest;

f. punitive damages; and

g. such other necessary and further relief that this Court deems just and proper.

## COUNT VIII

**(Deceptive Acts and Practices, N.Y.S.L. Article 22-a)**

183. Jane Roe incorporates each allegation above as if fully set forth below.

184. Jane Roe filed this contract claim within the three-year statute of limitations.

185. By advertising the default sanction of expulsion for campus sexual assaults in its legally mandated Student Code of Conduct but refusing to apply it (and lying about its application) when John Doe sexually assaulted Jane Roe, ISMMS engaged in deceptive acts and/or practices.

186. Upon information and belief, ISMMS effectively deceived incoming students by advertising a default sanction of expulsion for campus sexual assault in its legally mandated Student Code of Conduct without any intention or practice of applying it in fact when male students sexually assaulted female students on its campus.

187. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. loss of educational and career opportunities and benefits;

b. denial of a fair and impartial process regarding her sexual assault complaint;

c. past, present, and future economic losses, including lost wages and benefits;

d. reasonable attorneys' fees, costs, and expenses;

e. punitive damages;

f. prejudgment interest; and

g. such other necessary and further relief that this Court deems just and proper.

**COUNT IX**

**(Breach of Contract)**

188. Jane Roe incorporates each allegation above as if fully set forth below.

189. Jane Roe filed this contract claim within the six-year statute of limitations.

190. Jane Roe and ISMMS have a contractual relationship, first established and maintained by her payment of all required tuition and fees as a medical student and continued through her acceptance of a medical residency at ISMMS.

191. ISMMS had to apply its Student Code of Conduct to Jane Roe's sexual assault complaint because federal and state law mandated its application in such cases, and because the Code had been incorporated into its Sexual Misconduct Policy.

192. Despite this, ISMMS refused to comply with its Student Code of Conduct when sanctioning the male student for sexually assaulting her by dismissing him or finding "exceptional circumstances" to justify the issuance of a lesser sanction, thus breaching its contractual relationship with Jane Roe.

193. Upon information and belief, ISMMS effectively committed fraud on incoming students by advertising a default sanction standard for sexual assault in its Student Code of Conduct without any intention or practice of applying it in fact when male students sexually assaulted female students on its campus.

194. ISMMS evinced a high degree of moral culpability and/or turpitude when it engaged in dishonest conduct by creating the false public perception that it would not allow students who commit sexual assault on its campus by setting a default sanction of expulsion published and advertised in its Student Code of Conduct, when it in fact allows such students to return to enrollment.

195. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. loss of educational and career opportunities and benefits;

b. denial of a fair and impartial process regarding her sexual assault complaint;

c. past, present, and future economic losses, including lost wages and benefits;

d. prejudgment interest;

e. punitive damages; and

f. such other necessary and further relief that this Court deems just and proper.

**COUNT X**

**(Promissory Estoppel)**

196. Jane Roe incorporates each allegation above as if fully set forth below.

197. Jane Roe filed this claim within the six-year statute of limitations.

198. Per its Student Code of Conduct, Jane Roe reasonably relied upon ISMMS to apply the default sanction of expulsion to John Doe for his campus sexual assault of her, resulting in her reporting to access the Title IX grievance process and seeking it during the Title IX hearing as well as on appeal regarding the erroneous Title IX outcome.

199. Despite this, ISMMS refused to comply with its Student Code of Conduct, legally mandated by federal and state law for application to campus sexual assault complaints, by issuing the default sanction of expulsion or justifying its deviation to a lesser sanction of suspension by finding "exceptional circumstances," as required under its Code.

200. Instead, ISMMS falsely claimed it could issue the lesser sanction of suspension under its Sexual Misconduct Policy, despite this Policy having been incorporated into its Student Code of Conduct, which contained the default sanction standard of expulsion absent "exceptional circumstances" for campus sexual assaults.

201. ISMMS demonstrated a high degree of moral culpability and/or turpitude, as well as wanton dishonesty, by implying through its advertised default sanction of expulsion that it would not

return students who commit sexual assault to its campus absent "exceptional circumstances," when it in fact allows such students to return to enrollment and obtain their medical degrees.

202. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. loss of educational and career opportunities and benefits;

b. denial of a fair and impartial process regarding her sexual assault complaint;

c. past, present, and future economic losses, including lost wages and benefits;

d. prejudgment interest; and

e. such other necessary and further relief that this Court deems just and proper.

**COUNT XI**

**(Intentional Infliction of Emotional Distress)**

203. Jane Roe incorporates each allegation above as if fully set forth below.

204. Jane Roe filed this claim within the three-year statute of limitations.

205. ISMMS engaged in extreme and outrageous conduct when it abused its position of authority by allowing John Doe to return to campus alongside Jane Roe for academic and work-related activities after he had sexually assaulted her by wrongfully refusing to apply its default sanction standard of expulsion for sexual assault and to thus allow John Doe to return campus and have contact with her for academic and work-related activities.

206. As a sexual assault victim, ISMMS knew Jane Roe was particularly vulnerable on campus while completing her residency, such that it knew or could foresee the substantial probability that its unlawful decision to misrepresent that the Student Code of Conduct did not apply to then issue

a lesser sanction allowing John Doe to return to that same campus and to have contact with her for academic and work-related activities would cause her severe emotional distress.

207. ISMMS also knew that, due to Jane Roe's residency, she could not easily avoid John Doe without foreseeably impeding her access to campus-related opportunities and benefits.

208. ISMMS further engaged in extreme and outrageous conduct by falsely claiming that its Sexual Misconduct Policy had not been incorporated into the Student Code of Conduct, using this deception to wrongfully deny Jane Roe's appeal asking for the Code's default sanction standard and instead creating, applying, and upholding *ad hoc* standards to issue the lesser sanction of suspension.

209. Through this malfeasance, ISMMS intentionally and/or recklessly inflicted severe emotional distress on Jane Roe by misrepresenting that its Student Code of Conduct's default sanction standard did not apply to issue a lesser sanction for the male student who sexually assaulted her with the intent of allowing him to return to campus and complete his degree during her residency at ISMMS, carving out exceptions to the "no contact order" allowing him to be around her if there was an academic or work-related reason for him doing so.

210. As a direct and proximate result of ISMMS's malfeasance (committed by and through its officials, employees, and agents), Jane Roe sustained and/or continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. loss of educational and career opportunities and benefits;

b. denial of a fair and impartial process regarding her sexual assault complaint;

c. past, present, and future economic losses, including lost wages and benefits;

d. past, present, and future physical and psychological pain, suffering, and impairment;

e. reasonable attorneys' fees, costs, and expenses;

f. prejudgment interest;

g. punitive damages; and

h. such other necessary and further relief that this Court deems just and proper.

**PRAYER FOR RELIEF**

211. Wherefore, based upon the foregoing reasons, Jane Roe demands judgment against ISMMS for:

a. compensatory damages in an amount to be proven at trial (over $75,000);

b. punitive damages, where appropriate;

c. all reasonable attorneys' fees, costs, and expenses, where appropriate; and

d. all other necessary and further relief as justice may require.

**JURY DEMAND**

212. Plaintiff Jane Roe respectfully requests a trial by jury.

The 16th day of October 2026.

BAILEY DUQUETTE P.C.
*Attorneys for Plaintiff*

Laura L. Dunn, Esq. (Bar No. 5990270)
104 Charlton Street, Suite 1-W
New York, NY 10014-3693
212-658-1946, ext. 226
Laura@BaileyDuquette.com